# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re<br>KASIA CURWEN,<br>ROBERT CURWEN,<br>　　Debtors/Appellants,<br><br>　　　　v.<br><br>MOLLY T. WHITON,<br>　　Trustee/Appellee. | No. 3:15-cv-1824 (SRU)<br><br>On appeal from<br>United States Bankruptcy Court,<br>District of Connecticut<br>at New Haven<br><br>Bankruptcy No. 14-51331 |

## MEMORANDUM AND ORDER

The question in this bankruptcy appeal is whether a debtor in a Chapter 13 case who is ineligible for discharge as a result of receiving a Chapter 7 discharge within the prior four years is for that reason *per se* barred from obtaining confirmation of a plan that contemplates voiding (or "stripping off" or "lien-stripping") a wholly unsecured, junior mortgage lien. That question can also be framed as whether it is correct to follow a 2011 opinion of U.S. Bankruptcy Judge Albert S. Dabrowski—*In re Sadowski*, 473 B.R. 12 (Bankr. D. Conn. 2011)—which concluded that a *per se* bar does exist, or a 2013 opinion of Chief U.S. District Judge Janet C. Hall—*In re Rogers*, 489 B.R. 327 (D. Conn. 2013)—which expressed her view that *Sadowski* was wrongly decided (albeit in dicta, because she affirmed on other grounds).

The bankruptcy judges in this district have followed *Sadowski*, and apparently none has yet been reversed, despite Chief Judge Hall's discussion in *Rogers*. The position Chief Judge Hall expressed in *Rogers*, however, has become the majority rule elsewhere, and has been adopted by three Circuits. For the reasons that follow, I follow Chief Judge Hall and the decisions of those Circuits and accordingly REVERSE the decision of the Bankruptcy Court and REMAND to that Court for further proceedings consistent with this ruling.

### I. Standard of Review

The district courts have jurisdiction to hear appeals from "final judgments, orders and decrees" of the bankruptcy court as well as from some interlocutory orders. 28 U.S.C. § 158(a). The Supreme Court recently decided that orders that deny confirmation of a plan are not final for purposes of appeal. *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686 (2015). However, the Court noted its "expectation that lower courts will certify and accept interlocutory appeals from plan denials in appropriate cases." *Id.* at 1696.

The standard generally applied by district courts deciding whether to grant leave to appeal interlocutory orders of the bankruptcy court is the same as that set forth in 28 U.S.C. § 1292(b). *See Weiner's Inc. v. T.G. & Y. Stores Co.*, 191 B.R. 30, 31 (S.D.N.Y. 1996); *In re Orlan*, 138 B.R. 374, 377 (E.D.N.Y. 1992). The district court should grant leave to appeal from an interlocutory order where the decision of the bankruptcy court involves: (1) a controlling question of law (2) as to which there is a substantial ground for difference of opinion, (3) where immediate appeal may materially advance the termination of the litigation. *See* 28 U.S.C. § 1292(b). I granted leave to appeal in this case (doc. # 7).

When reviewing bankruptcy appeals, the district court must review conclusions of law *de novo* and apply the "clearly erroneous" standard to the bankruptcy court's findings of fact. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990). The issue on this appeal is a pure question of law and therefore subject to *de novo* review.

### II. Background

Kasia and Robert Curwen received a discharge in a Chapter 7 liquidation case in May 2014, and in August 2014 they filed this Chapter 13 reorganization case. They filed a motion under sections 506(a) and (d) of the Bankruptcy Code to obtain a valuation of their home in

2

Bridgeport, Connecticut, and an order entered finding that the value of the property is $120,000, that the debt owed to the first mortgage on the home is $179,858, and that the second mortgage therefore attaches to no value in the collateral and is totally unsecured.

The Curwens filed a Chapter 13 plan of reorganization that would eliminate the junior mortgage holder's lien on the property under 11 U.S.C. § 1322(b)(2). The Trustee objected, arguing that the plan is unconfirmable as a matter of law because the Curwens are ineligible for discharge and the plan does not otherwise provide for payment under nonbankruptcy law as is required by 11 U.S.C. § 1325(a)(5)(B)(i)(I). Following *Sadowski*, Bankruptcy Judge Alan H.W. Shiff sustained the objection. The Curwens sought leave to file an interlocutory appeal, and I permitted them to do so.

## III. Discussion

The parties dispute section 1325(a)(5)'s effect on the bankruptcy court's ability to confirm a Chapter 13 plan that contemplates "lien-stripping" under section 1322(b)(2). The crux of the dispute is whether the phrase "allowed secured claim," as set forth in section 1325(a)(5), should be defined using 11 U.S.C. § 506(a)'s definition of the phrase, or whether it should be defined as it was in *Dewsnup v. Timm*, 502 U.S. 410 (1992). To evaluate the dispute, I must first consider the distinctions between Chapter 7 liquidation and Chapter 13 reorganization.

### A. Chapter 7, Chapter 13, and "Lien-Stripping"

By filing a bankruptcy petition under Chapter 7 of the Bankruptcy Code, a debtor is able to receive a discharge of his or her *in personam* liabilities. As the Supreme Court held in *Dewsnup v. Timm*, 502 U.S. 410 (1992), Chapter 7 does not provide for stripping of *in rem* liens. Liens are therefore said to "pass through" or "survive" Chapter 7 bankruptcy. *See Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). The holder of the lien will continue to have recourse

3

for the underlying debt in the collateral itself, despite the discharge of the debtor's personal liability, which prevents the creditor from recovering against any other of the debtor's assets.

A Chapter 13 reorganization, on the other hand, has broad potential to strip off liens. *See* 11 U.S.C. § 1322(b)(2). A Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." *Id.* The power to "modify the rights" of secured claim holders includes the power to modify the creditor's "right to retain the lien until the debt is paid off," *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329–30 (1993), and thus the power to strip off the lien.

Section 1322(b)(2) does, however, limit lien-stripping. In accordance with what is known as the "antimodification" provision, a reorganization plan may not strip a lien that is "a claim secured only by a security interest in real property that is the debtor's principal residence." To determine whether a claim is subject to the antimodification provision, a court must first value the claim under section 506(a)(1). *In re Pond*, 252 F.3d 122, 126 (2d Cir. 2001).

Under section 506(a)(1), "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." By that language, the holder of a junior mortgage that attaches to no value in the collateral (because the value of the property is less than or equal to the amount outstanding on the primary mortgage or other senior encumbrances) is the holder of an *unsecured* claim. In that situation, the junior mortgage holder will not be protected by the antimodification exception of section 1322(b)(2) and the wholly unsecured lien may be stripped. *In re Pond*, 252 F.3d at 126.

4

B. <u>The BAPCPA and "Chapter 20"</u>

The parties here do not dispute that sections 506 and 1322 operate in tandem to strip junior liens that are "unsecured" under section 506(a). Furthermore, there is no dispute that a prohibition on discharge does not, alone, preclude plan confirmation under Chapter 13. *See* Br. of Appelee at 3 (doc. # 11). The dispute is only whether "lien-stripping" in a Chapter 13 bankruptcy is permitted notwithstanding a debtor's ineligibility for discharge. The Trustee's argument (and the holding of *Sadowski*) is that changes to bankruptcy law enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") create a *per se* prohibition on the application of section 1322(b)(2) in a Chapter 13 case where the debtor has received a Chapter 7 discharge within the prior four years. The Curwens argue that the BAPCPA did not amend sections 1322(b)(2) or 506(a) and therefore has no effect on the ability of the reorganization plan to strip wholly unsecured liens of junior mortgage holders, even if the debtor is ineligible for discharge.

The BAPCPA made two amendments to the Bankruptcy Code that potentially affect the outcome of this case. First, it created a new subsection, section 1328(f), which states that the court "shall not grant a discharge of all debts provided for in the plan" if the debtor had received a discharge under Chapter 7 in the preceding four years.[1] Second, it modified the requirements for confirmation of Chapter 13 plans, codified at section 1325(a)(5)(B)(i)(I). The latter subsection provides that "with respect to each allowed secured claim provided for by the plan," and with some exceptions not applicable here,[2] the plan must provide, among other things, that "the holder of such claim retain the lien securing such claim until the earlier of— (aa) the

---

[1] Chapter 13 cases filed during that period of the lingering effect of a Chapter 7 discharge are colloquially referred to as "Chapter 20" bankruptcies.
[2] Those exceptions apply when the holder of the claim accepts the plan or when the debtor surrenders the collateral.

5

payment of the underlying debt determined under nonbankruptcy law; or (bb) discharge under section 1328 . . . ." 11 U.S.C. § 1325(a)(5)(B)(i)(I).

Here, it is undisputed that the debtors are not eligible for "discharge under section 1328" because of their Chapter 7 discharge within the preceding four years; and they have not paid and do not in their proposed plan provide for "the payment of the underlying debt" (which, not incidentally, was discharged as *in personam* debt in Chapter 7 but remains in connection with the *in rem* lien). The dispute, then, is whether a Chapter 13 plan can be confirmed notwithstanding the fact that the debtor did not receive discharge under section 1328 and the junior mortgage lienholder did not receive "payment of the underlying debt determined under nonbankruptcy law . . . ." 11 U.S.C. § 1325(a)(5)(B)(i)(I). The Trustee argues that the failure to comply with section 1325(a)(5)(B)(i)(I) with respect to the junior mortgage lien renders the plan unconfirmable. The Curwens respond by contending that the junior mortgage lien is not subject to section 1325(a)(5) because it is not an "allowed secured claim."

Judge Dabrowski held, under essentially similar facts in *Sadowski*, that section 1325(a)(5)(B)(i)(I) *does* apply to junior mortgage liens that are unsecured under section 506(a), notwithstanding section 1325(a)(5)'s express application "with respect to each allowed secured claim." Thus, the court held that the plan could not be confirmed. *In re Sadowski*, 473 B.R. at 20. The court reached that conclusion for two reasons.

Principally, the court relied on the Supreme Court's holding in *Dewsnup* to conclude that section 1325(a)(5)'s phrase "allowed secured claim" should not be defined using section 506(a)'s definition of a secured claim. Rather, the phrase must be defined in the manner *Dewsnup* instructs the court to define "allowed secured claim" when it appears in section 506(d).

6

In concluding that Chapter 7 did not permit lien-stripping though the operation of section 506(d), the Court in *Dewsnup* held that the phrase "allowed secured claim" could not mean precisely the same thing in both sections 506(a) and 506(d). 502 U.S. at 417.[3] The Court "express[ed] no opinion as to whether the words 'allowed secured claim' have different meaning in other provisions of the Bankruptcy Code," *id.* at 417 n.3, but held that "an allowed secured claim" under section 506(d) included any claim "allowed" under section 502 and "secured by a lien with recourse to the underlying collateral," irrespective of whether it is classified as unsecured under section 506(a). In support of its holding, the Court highlighted the fact that section 506(a) "is not a definitional provision" and did not control the definition of those words in section 506(d). *Id.* at 415.

Judge Dabrowski in *Sadowski* applied that same reading of "allowed secured claim" to section 1325(a)(5), concluding that section 1325(a)(5) encompasses all claims that are both "allowed," under section 502, and "for which the creditor holds a lien to secure payment," irrespective of whether there is any remaining value in the collateral to which the lien may attach. *In re Sadowski*, 473 B.R. at 19. Accordingly, Judge Dabrowski concluded that a plan could not be confirmed if it provided for lien-stripping of a junior claim without complying with section 1325(a)(5)(B)(i)(I). *Id.* at 20.

Judge Dabrowski concluded that his statutory interpretation was consistent with the "policy considerations" of the BAPCPA, which was enacted to curb perceived bankruptcy abuses. The filing of serial bankruptcy cases under different chapters of the Bankruptcy Code to achieve what cannot be achieved in any one filing could at least arguably be considered such an

---

[3] Because section 506(d) can operate to void a lien that "secures a claim against the debtor that is not an allowed secured claim," and section 506(a) says that an "allowed claim" that is not secured by any value in the collateral "is an unsecured claim," those two provisions taken together might have operated to strip some liens in Chapter 7 bankruptcies even without the added effect of section 1322(b)(2). That is the view expressed in the *Dewsnup* dissent by Justice Scalia, joined by Justice Souter, who saw no basis for the ambiguity noted by the majority.

7

abuse. Chapter 7 bankruptcy permits *in personam* discharge but not *in rem* lien-stripping. Chapter 13 permits both, but because it is a reorganization rather than a liquidation chapter, it will generally require debtors to repay as unsecured debts the portion of claims corresponding to stripped-off liens, to the extent they have income to do so. The confirmation of a Chapter 13 plan still relies on a discretionary "good faith" requirement under section 1325(a)(3) and (7), but Judge Dabrowski identified a BAPCPA policy of imposing objective tests rather than discretionary rules, and concluded that a *per se* bar, which he inferred from the amendment to section 1325(a)(5)(B)(i)(I), is consistent with that policy.

Chief Judge Hall in *Rogers* disagreed, and since that opinion was issued, three Circuits have joined her in disagreement. *See In re Blendheim*, 803 F.3d 477 (9th Cir. 2015); *In re Scantling*, 754 F.3d 1323 (11th Cir. 2014); and *In re Davis*, 716 F.3d 331 (4th Cir. 2013). I agree with Chief Judge Hall, and with the opinions of the Fourth, Ninth, and Eleventh Circuits, for reasons that are broadly similar to the ones they expressed.

First, the BAPCPA did not amend the provisions that have long been used to accomplish lien-stripping in a Chapter 13 bankruptcy. Thus, the analysis remains the same as it was prior to passage of the BAPCPA. *See In re Davis*, 716 F.3d 331, 338 (4th Cir. 2013). To determine whether a claim is subject to the protections that Chapter 13 affords to "allowed secured claims," the court must first value the claim under section 506(a). *See Nobelman*, 508 U.S. at 328; *In re Pond*, 252 F.3d at 126; *In re Davis*, 716 F.3d at 338. Under section 506(a), a claim secured by a lien is only an allowed secured claim to the extent that the value of the creditor's interest in the property is greater than the value of other encumbrances that have priority over the creditor's lien. *See In re Pond*, 252 F.3d at 126. If the creditor is a junior lienholder and, as a result of insufficient market value net of other encumbrances, there is no value in the collateral to which

the lien may attach, that creditor does not hold an allowed secured claim. *Id.* Because the creditor is not the holder of an allowed secured claim, section 1325(a)(5) has no application with respect to that creditor's claim, and the stripping of the creditor's lien does not bar plan confirmation.

This analysis was not affected by *Dewsnup*, which involved a Chapter 7 bankruptcy and only required that "section 506 operate in tandem with another statutory provision to effectuate lien-stripping[.]" *In re Davis*, 716 F.3d at 338. Moreover, *Dewsnup* was decided in 1992 yet did not factor into the Second Circuit's 2001 decision in *In re Pond*, which used section 506(a) to value a claim that was subject to lien-stripping under section 1322(b)(2). *See In re Pond*, 252 F.3d at 126.

Furthermore, the BAPCPA could have, but does not, categorically prohibit the filing of a Chapter 13 petition and plan, or the application of section 1322(b)(2) to strip liens, when a debtor received a Chapter 7 discharge in the preceding four years. As discussed above, there is no dispute that a debtor ineligible for discharge may file for reorganization under Chapter 13, and that Chapter 13, at least generally, permits the stripping of liens under section 1322(b)(2).

Although the BAPCPA prohibits discharge of *in personam* liability for a time, that prohibition is legally distinct from the stripping of *in rem* liens (permissible through section 1322(b)(2)). A "discharge" is merely "an injunction against . . . an action . . . to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Moreover, "a discharge is neither effective nor necessary" to void a lien or otherwise impair a creditor's *in rem* right to foreclose on a property. *In re Blendheim*, 803 F.3d at 493. Rather, "discharge leaves unimpaired a creditor's right to proceed *in rem* against the debtor's property." *Id.* at 494. Had Congress wished to prohibit "Chapter 20" debtors from voiding or modifying creditors' *in rem* rights, "it would not have done so by restricting the availability of a mechanism that by

9

definition only affects *in personam* liability." *Id.* at 496. A conclusion to the contrary would "ignore the Bankruptcy Code's unequivocal distinction between *in personam* and *in rem* liability." *Id.* at 495.

A Chapter 13 plan must be confirmed in accordance with section 1325. Under section 1325(a)(5), holders of allowed secured claims are afforded special protections. To determine whether a creditor is entitled to such protections, a court must first look to section 506(a) to see if that creditor is a holder of an allowed secured claim. *See In re Davis*, 716 F.3d at 338; *see also In re Pond*, 252 F.3d at 126 (looking to section 506(a) to determine whether a claim is subject to the antimodification provision of section 1322(b)(2)). If the creditor is not a holder of an allowed secured claim, as defined by section 506(a), the creditor is not afforded the protections of section 1325(a)(5). *In re Davis*, 716 F.3d at 338; *see also In re Scantling*, 754 F.3d at 1329. I therefore conclude that the Bankruptcy Code, as amended by the BAPCPA, does not create a *per se* bar to the confirmation of a "Chapter 20" plan that contemplates stripping wholly-unsecured junior liens during the period that a debtor is ineligible for discharge.

## IV.   Conclusion

For the foregoing reasons, and because I broadly agree with Chief Judge Hall's opinion in *In re Rogers*, 489 B.R. 327 (D. Conn. 2013), the Fourth Circuit's in *In re Davis*, 716 F.3d 331 (4th Cir. 2013), the Eleventh Circuit's in *In re Scantling*, 754 F.3d 1323 (11th Cir. 2014), and the Ninth Circuit's in *In re Blendheim*, 803 F.3d 477 (9th Cir. 2015), the decision of the Bankruptcy Court is REVERSED and this case is REMANDED for further proceedings not inconsistent with this opinion.

So ordered.

Dated at Bridgeport, Connecticut, this 26th day of August 2016.

10

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge